Moncure, P.
This is an appeal from a decree of the Circuit court of Albemarle county, for the sale óf land for the payment of a sum of money and interest, as a good money debt. The appellant contends that it is a Confederate money debt, which ought to have been scaled; and whether it is or not, is the question we now have to decide.
*719 By articles of agreement, made and entei’ed into on the 19th day of December, 1862, between Andrew J. Long of the one part and William S.-Shiflett of the other part, reciting that the said Long had that day purchased of James Beazley two parcels of land, one containing 100 acres, and the other containing 50 acres, adjoining each other, for which he gave $1,708.25, the said Long, on his part, agreed, to let the said Shiflett have the use and possession of the said parcels of land for five years from said date, on condition that he, said Shiflett would pay unto him, said Long, the interest on the said purchase money punctually, at the end of each year; and, and at the end of the said five years, if the said Shiflett should have paid up punctually the interest as aforesaid, and would then pay up the whole of the said principal sum, the said Long bound himself to make-to said Shiflett a deed of conveyance in fee simple for said land, such as he, said Long, should get from said Beazley; and said Shiflett, on his part, agreed to take said parcels of land as set forth above, and to pay up‘the said interest annually, and to take good care of said lands, and keep them in as good repair as though they were his own lands.
By deed dated on the 14th day of January 1863, and afterwards duly recorded, the said James Beazley and his wife, in consideration of $1,733 02 to them in hand paid by the said Andrew J. Long, conveyed to the said Long in fee simple, the said two parcels of land, with general warranty as to the said parcel of one hundred acres, and with special warranty as to the parcel of -fifty acres.
In March 1868, the suit was instituted in which the decree aforesaid was rendered. It was brought by Margaret J. Long, in her own right and as administratrix of her late husband, the said Andrew J. Long, who had departed this life intestate; and the said Shiflétt *720 and- the heirs at law of her husband, who were his four infant children, -were made defendants to the suit. In her bill, she charges that said Shiflett took possession of said land under said agreement, and paid the mterest UP to the year 1865, but had since paid nothing, and has never paid any part of the principal; that on the 18th day of December 1867, the five years during which he was to remain in possession of said land, expired; and that all his rights under said agreement have ceased and determined, and the said two parcels of land are now the property of herself and her four infant children; she having right of dower therein, and the residue belonging to her children. She further charges-that said Shiflett will neither pay the principal and interest due on said contract on the 18th of December 1867, nor surrender said land. She says she is perfectly willing, for herself and her infant children, to take the land (which she says is worth fully $1,708- and 25 cents in good money,) and discharge the said Shiflett from the payment of the principal, on condition that he will pay up the interest due from him for use and occupation of the said premises; and she therefore prays that said Shiflett be compelled, either to surrender the said land to her and her infant children, paying the interest now due for use and occupation, or to pay the complainant, as administratrix of her husband, the sum of $1,708 and 25 cents-with interest thereon from the 18th day of December, 1865; and for general relief.
In June 1868 the said Shiflett filed his answer to the-said bill, in which he says that the “agreement between Andrew J. Long and your respondent,bearing date December 18th, 1862, by which he was to get title of said land from Beazley, so far from being any real purchase of Long from Beazley, was, in reality, only an arrange *721 ment between tbe parties mentioned, and your respondent to pay a debt due by this respondent to said Beazley for money advanced by the latter for and on account ■ of your respondent; and the title was then vested, in appearance, in Beazley, for the sole purpose of securing the debt due him by respondent. James Beazley was desirous of getting thismoney; and upon this respondent entering into a negotiation with Long to get the money to pay Beazley, and -when Beazley expressed his willingness to take Confederate treasury notes in discharge of said debt, then Long was willing to let your respondent have the money to pay off the said debt to Beazley, provided he should get the land conveyed to him in absolute form, as a security for the money so advanced. The agreement marked ‘ Exhibit C,’ with complainant’s bill, was then entered into, giving the time therein mentioned to repay the money so advanced for your respondent. The money advanced by Long was Confederate money; and there was no agreement that it should be repaid in any other kind of money; and this respondent is advised that this transaction was in reality only a mortgage to Long to secure the payment of the money advanced by him for your respondent, though upon its face, it was an absolute conveyance. The amount of money advanced was $1,708.25 in Confederate currency, which was then the universal currency of the country. This amount paid off this respondent’s indebtedness to James Beazley, and also paid for the 50 acre tract mentioned in the bill, which tract was reckoned at $250 at that time, and which respondent had agreed to buy, in the transaction with Beazley; Long furnishing him the money and the deed being made to him by Beazley to secure him as before described?’ “ And when Long paid the debt to Beazley for your respondent, it was distinctly understood that he was was merely put in the *722 same position as Beazley then occupied, namely, holding title for security for his money. Tour re- • spondent, therefore, has for years been in possession of the land as the owner of it; has never rented from any one, but paid interest on money for which the land was bound. Tour respondent remained in possession of this land when the agreement 0 was entered into, and paid interest on money to Long in the same way as before that time he had done to Beazley, and continued to pay the interest to Long or his representative up to 1865, punctually as it fell due. Before the interest fell due for 1866, your respondent applied to-one Thomas "Wood, a counsellor learned in the law, by whom he was advised that the principal of‘said debt to-Long should be scaled, and he furnished your respondent with a'statement showing the amount of the debt to-be $569.41, or at the .utmost $621.16, in United States-treasury notes, on which the interest due for the 'year-1866, amounted to $37.26,” which interest, when it became due, respondent says, he tendered to complainant in legal tender notes of the United States, but she refused to receive the same. “ On the 18th of December-1867, when the principal became due, your respondent,” he further says, “ in company with one of his neighbors-went to the house of the complainant, and tendered payment of the principal ($621.16) and the two years’ interest on that amount ($37.26 for each year), in the aggregate amounting to $695.68, in legal tender treasury notes of the United States, which she then refused to take, and still refuses, though your respondent has at all times since been ready and willing to pay her that amount;” which, he contends, is all she is entitled to recover.
Tour witnesses were examined by the plaintiff, and seven by the defendant Shiflett. Those examined by *723 the plaintiff’ were James Beazley, Wyatt S. Beazley, Austin Gentry and Thornton W. Mooney. The first two were privy to the contract between Andrew J. Long and the defendant Shifiett, and were present when it was entered into, and are the only witnesses examined who were present on that occasion. The said defendant was of course present and offered himself as a witness in his own behalf, but he was not examined, because incompetent, as he certainly was; the other party to the contract being dead. The substance of so much of the testimony as seems to be material to be stated is as follows:
James Beazley, a witness for the plaintiff, testified that he owned the land in question. He bought the 50 acre tract at a sheriff’s sale under a decree, and gave for it, according to the best of his recollection, $100. The 100 acre tract he bought of the defendant Shifiett, who bought it of Roberts, who bought it of Crawford. Witness thought that Shifiett gave $1.200 for the 100 acre tract, not less than that: on reflection thought it was more; thought he gave too much for it. Witness advanced part of the money for him, became bound for another part, which he had to pay, and also paid some other debts for him. The amount thus paid by witness for Shifiett was the precise price allowed by the former to the latter for the 100 acre tract. Witness could not remember the amount, but said it was stated in the deed made to him by Shifiett. On his examination in chief he gave the following answers to the following questions:
4th question. When you purchased the land from Shifiett, were you put in possession of it by him ?
Answer. Ho, sir, I sold it to him, and gave him five years to pay the money. He was to pay the interest on it annually.
*724 6th question. Did you ever take possession of said land and rent it out ?
Answer. Yes sir. After Shiflett’s time expired he gave it up to me, and I rented it out two years, I think.
7th question. What then became of the land?
Answer. I had agreed for Mr. Shiflett to move on it again, by paying me one-third of the crop. After this he was after me to buy it again from me. He proposed he should take Harden Shiflett to see the money paid; the money was to come through Harden Shiflett. They wished to pay a good part ¡in bonds, which I would not take. Mr. Shiflett came to me again, and told me Andrew J. Long would buy the land and pay every dollar in cash, and then Long would let him have it if he could pay for it in five years. Mr. Shiflett brought Long down there, and I agreed to let him have it. He was to pay me all Mr. Shiflett owed me, and we made a calculation what it was, principal and interest, which Mr. Long paid me; that is, he paid me all that was due on the land; and before I made the deed, I required him to pay the balance due from Shiflett; which he did.
8th question. To whom did you sell the land, and to whom did you make the deed ?
Answer. I considered the land sold to Andrew J. Long, and made the deed to him. Afterwards, when I executed the deed, I oftered him $500 to let me stand in his shoes.
On his cross examination, he gave the following answers to the following questions:
5th question. Please state distinctly, for what purpose the land was conveyed to you by Shiflett ?
Answer. The purpose was‘a bona fide right in me, if he could not pay the money in five years.
6th question. 'What money dó you refer to?
*725 Answer. Money that I had paid for the land, what J * it cost me.
13th question. State whether you desired to hold the land, or whether the reason for your taking a deed from Shiflett was to secure the payment of the money you had advanced for him, with interest ?
Answer. I did not wish to hold the land, but merely wanted my money hack. There was no time at which I would not have conveyed the land to any one that Mr. Shiflett would have asked me, upon the payment of the money paid and advanced by me for Shiflett.
14th question. You speak in answer to a former question, of taking rent for the place. Did you receive that rent in satisfaction of the interest on the money that Shiflett owed you ?
Answer. Yo. The land was mine and the rent was mine. Mr. Shiflett had moved off the land and given it up.
15th question. "When you let Mr. Shiflett move on the land again, did he pay you part of the crop for rent, and also pay interest on money; or did you take the rent in payment of the interest?
Answer. He was to pay me one-third of crop in rent, but in a short time I sold to Long, and there was no division of crop.
16th Question. How much did Andrew J. Long pay you? When, and in what kind of money?
Answer. He paid me $1,732.02. It was paid at the date of the contract between Long and Shiflett, all in Confederate money.
17th question. What is the value of the 100 acre tract of land now, if placed in market ?
Answer. I think it worth $1,200. I was willing at that time to go a little over $12.00 in paying debts for him. When the thing wound up he owed me $1,732.
*726 18th question. When A. J. Long paid you $1,732.02 was that the exact sum, principal and interest, that was due you hy Shiflett?
Answer. Yes sir; if we made the right kind of calcu^aii°n-
19th question. Was there not included in that sum the value of the 50 acre tract, bought by you from Rippetoe?
Answer. Certainly.
20th question. At what price was this tract put down in the trade with A. J. Long ?
Answer. At $250, if I am not mistaken.
On his re-examination by the plaintiff', he gave the following answers to the following questions:
1st question. Was the money due from Shiflett to you Confederate money or good money ?
Answer. It was good money I let him have before the war.
2d question. Lid you sell the land to Long, and convey it to him with the knowledge and consent of Shiflett?
Answer. Certainly, at the request of Mr. Shiflett.
Wyatt S. Beazley, another witness for the plaintiff, testified that he was the draughtsman of the contract between Long and Shiflett, of the 18th of Lecember, 1862, and witnessed it: that the said contract conveys the true agreement between the parties: that the one hundred acre tract was. in his opinion, worth fifteen dollars per acre in good money, in 1860; and he supposed that on the 10th of August, 1868, when he gave his testimony, it would have sold for $12 per acre, on the terms of one-third cash, and the balance in two equal annual instalments.
Austin Gentry, another witness for plaintiff, testified that in 1868 Shiflett told him Long had bought the land *727 of Beazley, with the understanding that he, Shiflett, was to have the privilege to pay interest on the money which Long had paid to Beazley promptly for five years; and at the end of five years he was to pay punctually the principal, and Mr. Long was to make him a deed for the land. He said he was to pay in such currency as was in circulation when the debt fell due. "Witness thought the hundred acre tract worth fifteen dollars an acre, and the fifty acre tract worth $200; and it was his impression, though he was not positive, that Shiflett gave Roberts $1,700 for the one hundred acre tract.
Thornton "W. Mooney, the remaining witness for the plaintiff, testified that he had long known the land in controversy, and considered the one hundred acre tract worth $15 an acre, and the fifty acre tract worth $250. $1,700 was the price which Shiflett agreed to pay Roberts for the one hundred acre tract. Shiflett acknowledged to witness, since this suit was brought, that the debt claimed by the plaintiff was a just debt, and that he would have paid it but for his being persuaded by Mr. Powell that it could be scaled. The plaintiff is a daughter of this witness, and the testimony of one of the defendant’s, witnesses, B. P. Powell, supposing it to be'competent, tends to impeach the veracity of this witness.
B. P. Powell, a witness for the defendant, appears to be interested in the result of the suit, being a sub-purchaser from Shiflett of a portion of the land in controversy ; and his testimony was excepted to by the plaintiff on that ground. It is very long, and not being competent testimony, will not be stated; though if it were competent, it would not be very material.
Edward Powell, another witness for defendant, testified that on the 10th day of December 1867 he and Samuel Shiflett, at the request of the defendant, "Wl S. Shiflett and B. P. Powell, carried from them to the *728 plaintiff, Mrs. Long, $695.68 in gold and greenbacks, being tbe sealed value, as ascertained by Mr. W ood, of tbe ■ debt due by the defendant to tbe plaintiff, supposing it to be payable in Confederate money, and tendered the money to her; but she declined to take it, unless tbe full amount was paid. He considered tbe present value of tbe one hundred acre tract to be $10 per acre in its then condition, and that of tbe fifty acre tract to be $125. The river has done the one hundred and fifty acre tract a great deal of damage; and tbe bouse and fifty-five pannels of fencing have been burnt on tbe Stephen, Shiflett place within tbe last two years.
Samuel Shiflett, another witness for defendant, testified that be considered tbe fifty acre tract to be worth $100, and tbe one hundred acre tract $10 per acre.
James Early Shiflett, another witness for defendant, gave the same testimony as tbe last witness in regard to tbe present value of tbe land. He also testified that be beard a conversation in tñe spring of 1863, between Long and Harden Shiflett, in which Long said, in answer to questions of Harden Shiflett, that if Confederate money was current when tbe money became due from tbe defendant to Long for tbe land it could be paid in Confederate money; and if Confederate money was not then current, be, Long, reckoned be would have to take such money as tbe sheriff' took for taxes.
Harden Shiflett, another witness for defendant, detailed a long conversation which be said be had with Andrew J. Long, in tbe spring of 1863, in regard to tbe latter's contract with the defendant, in which Long made similar remarks to those stated by Tames E. Shiflett, in regard to tbe currency in which the debt due by tbe defendant to Long would be payable, ■ and many other statements. He thought tbe one hundred tract to be worth 800 dollars. It bad been a good deal damaged *729 by water. He thought $100 to be a fair price for the 50 acre tract, but he did not know this land very well* This witness appears, from his testimony, to be extremely illiterate; he is a brother-in-law of the defend" ant; and the testimony of B. B. Powell, supposing it to be competent, tends to impeach the character of this witness for veracity.
Several other witnesses were examined in behalf of the defendant, but it is not necessary to state their testimony.
■ On the 27th day of October, 1868, the cause came on to be heard on the bill, exhibits, answer, replication thereto and depositions, when a decree was made, refering it to a commissioner of the court, to enquire whether the contract between A. J. Long and W. S. Shiflett, of the 18th day of December, 1862, was intended as a sale? either absolute or conditional, from Long to Shiflett? of the land therein mentioned; or, taken in connec tion with the deed from Beazley and wife to Long, dated January 14th, 1868, was designed as a mortgage to secure the repayment to Long of money advanced by Long to Beazley for said Shiflett; and assuming the same to have been intended as a mortgage, further-to enquire what amount was so advanced, and what was the true understanding and agreement between the parties, as to the kind of currency in which the same was to be repaid, and what balance thereof remained unpaid. And the,, commissioner, whatever conclusion he might arrive as to the first enquiry submitted to him, was directed to make a statement based upon the idea that the tsansaetion was intended as a sale from Long to Shiflett; and showing what, in his opinion, was the true understanding and agreement between the parties as to the kind of currency in which the purchase money mentioned in the contract was to be paid, and what amount thereof now *730 remains unpaid. The commissioner was also directed to take an account of the fair value of the land in the proceedings mentioned at the date of the contract of the 18th of December 1862, as well as at the time of executing said decree; and he was directed to report his proceedings to the court.
It does not appear that any thing was ever done in execution of the said decree; but on the 27th day of October, 1869, by consent of parties by counsel, the said decree was set aside. And the cause coming on, by such consent, to be further heard upon the papers formerly read, and the depositions, (since taken,) on consideration thereof, the court being of opinion that whether the conveyance from Shiflett and wife to Beazley, and by Beazley and wife to Long, was a conditional sale or a mortgage, the defendant, Shiflett, is not entitled to have the debt scaled as a debt to be discharged in Confederate money. If said conveyance was a conditional sale, the plaintiff1 has the right to have the land sold to discharge the vendor’s lion for the purchase money. If, on the other hand, it was a mortgage, the plaintiff has the'right to have the mortgage foreclosed. The court, therefore, decreed, that unless the defendant, Shiflett, should, within six months from the date of the decree, pay to the plaintiff) the administratrix of said Long, the sum of $1,708.25, with interest thereon from January 1st, 1865, till paid, a public sale should be made of the land in the proceedings mentioned, on the terms in said decree mentioned, by commissioners therein named, after advertising, and giving notice of the time, place, and terms of sale as therein mentioned.
From the last mentioned decree the defendant applied to a judge of this court for an appeal; which was accordingly allowed.
The debt due by the defendant Shiflett to Beazley? *731 •which was paid by Long at Shiflett’s request, if debt it could be called, was a good money debt, created before the war. This fact is expressly proved, and is not controverted. Beazley was invested with the legal title to the land in controversy. He had fully paid for h, and. received a deed for it; and though he had given Shiflett the privilege of paying him the same amount of money' with interest in five years, and then receiving tbe legal title to the land, yet Shiflett had made default in such payment; had forfeited all legal or equitable title to the land; was occupying it merely as tenant of Beazley, and was dependent entirely upon the will and pleasure of Beazley to sell and convey him the land, upon payment of the money which he had so long failed to pay, and forfeited all right of paying. Still Beazley was willing to convey the land as he, Shiflett, might request, upon his making such payments; and Shiflett was extremely anxious to make an arrangement with somebody for such payment, in order that another opportunity might thus be afforded him to make the property his own at some future day. He was then, it seems, wholly without means to make the payment himself; and he had failed to obtain the means by the use of the property during the five years which Beazley had given him for the purpose ; but he no doubt thought that if he could find a friend who would buy the property of Beazley, and give him, Shiflett, five years more, he could, in that time, make the money, and pay for the land himself. He would, gladly, have obtained this extension of time from Beazley ; but Beazley, it seems, was unwilling to indulge him with this privilege any longer, and required that the money should be paid to him at once, as the condition of his parting with the title to the land. The defendant then tried to make an arrangement through his brother-in-law, Harden Shiflett, who proposed to pay *732 the debt, or the greater part of it, in bonds; but Beazley was unwilling to receive bonds in payment. He was willing, however, to receive Confederate money, which was then (in December 1862,) comparatively not much depreciated in value as compared with gold; and which could be used as good money and without any loss, in the payment of specie debts and in the purchase of real estate and other property. Accordingly, the arrangement was made with Long, which was carried into effect by his agreement with Shiflett, of the 18th of December 1862; and the deed to him from Beazley and wife, of the 14th of January 1863, in the proceedings mentioned. By that arrangement, Shiflett secured all the benefit he would have obtained by a further indulgence from Beazley; and not only that, he secured to himself five years more time to prepare for the payment of the money; and thus to make the property his own. He was placed in precisely the same situation in which he stood under his first arrangement with Beazley. He obtained all the advantages which he could reasonably ask for or expect. In obtaining five years more time for the payment of his debt, he obtained a great benefit' which cost him nothing. He had no reason to ask or expect, in addition to that, a reduction of the debt; a change of its character from a specie to a Confederate money debt. If he had, himself, paid the debt with Confederate money, he would thus'have become entitled to the benefit which accrued therefrom; but he had not a dollar of Confederate money, any more than of specie; and he could not therefore pay the debt or any part of it, in Confederate money any more than in specie. He had to invoke the friendly aid of Long, who paid the debt in Confederate money, and thereby conferred a great service on him in securing to him a long extension of time for the purchase of the property, on terms which *733 had long before agreed upon. ' The benefit thus conferred on him was just as great, and indeed precisely the same, as if Long had paid every dollar of the debt in specie. While Shifiett was not at all entitled to any benefit from the character of the fund in which the payment was made, Long, who made it, was fully entitled to such benefit, in reason, justice and law. The money paid might have been laid out at par value by Long in the purchase of other land, or in the payment of any other specie debt. It was applied, at the request, and for the benefit and accommodation of Shifiett, to the payment of the debt to Beazley and the purchase of the land in controversy. And it would be unjust, in the last degree now, after Shifiett has for more than ten years enjoyed the use of the land, without having paid any part of the principal of the debt, or any rent or interest for the last seven years, to compel Long to receive payment of the scaled value of the debt, according the gold standard, in full discharge of it; that is, the sum of $621.16 in discharge of the principal sum of $1,708.25. Certainly Long never bargained for, and never expected, any such unjust result. Shifiett does not pretend he ever did. He does not pretend that there was any agreement or understanding between himself Long that he might make payment of the debt to Long Confederate money.
All that he contends for is, that nothing was said upon the subject of the currency in which the payment was to be made; and he pretends to infer an implied agreement to receive payment in Confederate money from the fact that payment was made by Long to Beazley in Confederate money. Such an inference is a gross and glaring non sequitur. It ignores the all important facts that payment was made by Long to Beazley in 1862, when Confederate money was little depreciated *734 m value, even m comparison with gold, and not at all . ° m reference to land and the payment of ante-war debts ; that it was rapidly depreciating; and that payment of the money by Shiflett to Long was not to be made until the 18th day of December 1867, All the benefit that Long expected from the arrangement; (and that he certainly had a good right to expect,) was, that the land or debt which he bought would be his. He paid the full market value of either; and might have made at least as good an investment ol his money in the purchase of other lands or other debts. Suppose that Beazley had held Shifletts bond for the amount, and Long had obtained an assignment of it without recourse, as he might have done, by paying the amount to Beazley in Confederate money; can any body doubt that he could forthwith have enforced payment of the debt as a specie debt for his own benefit ? Where is the difference between that case and this; except that five years more time was given to Shiflett in this case for the payment of the debt? Surely that difference ought not to give Shiflett the advantage in this case of being able to discharge his debt, after so long an indulgence, by paying only one-third of its amount. But Beazley did not hold the bond of cShiflett for the money, and therefore could not make such an assignment. He, however, held the legal title to the land, and indeed owned it in equity as well as at law; and he conveyed that title to Long; which gave him at least as great an advantage as an assignment of a bond in the case supposed, would have given him. It pannot be presumed that Long would have agreed to wait five years for the payment of the money and then to receive it in Confederate money or any thing but good money. The only motive he could have had for making the arrangement, looking to his own interest in the mat *735 ter, was, that by making suck an investment of a depreciating fund, he would secure the payment of the amount in good money after the end of the war, or else acquire property which might then be worth the amount in good money. There was no difficulty in making such an arrangement at that time; and in making this particular arrangement, no injury whatever was done to Shiflett; but, on the contrary, a benefit. The loss that was sustained by receiving the Confederate money of Long, was sustained by Beazley only'; and he consented to sustain it. Shiflett sustained none, and has no cause whatever of complaint.
The cases of Barnett v. Cecil, 21. Gratt. 93; and Walker per rep. v. Pierce, id. 722, cited by the counsel for the appellees, have a strong bearing on this case, and tend strongly to sustain the foregoing opinion.
In every view of the case, therefore, I think there is no error in the decree appealed from, and that it ought to be affirmed; except that there seems to be a mistake in the decree, arising no doubt from an oversight, in making the interest run from the 1st of January 1865, instead of the 18th of December 1865, the day from which interest is claimed in the bill; but this mistake can be corrected by amending and affirming the decree, which I think should be done accordingly.
The decree was as follows :
The court is of opinion, for reasons stated in writing and filed with the record, that there is no error in the decree appealed from, except that there appears to be a mistake, which no doubt arose from an oversight, in making the interest on the principal sum of $1,708.25, therein mentioned^ run from the 1st day of January 1865, instead of the 18th of December, 1865, 'the day from which interest is claimed in the bill; which mis *736 take can be corrected by amending and affirming the decree. _ Therefore, it is decreed and ordered that the said decree be amended as aforesaid, and that thus amended, it be affirmed, and that the appellant pay to the appellees thirty dollars (f 30) damages and their costs by them about their defence in this behalf expended.
• Decree amended and affirmed.